Village of Rome agt. Knox.

---

## SUPREME COURT.

### The Village of Rome agt. Clark Knox.

By the 25th section of the act passed April 9, 1855, called "An Act for the Prevention of Intemperance, Pauperism and Crime," it is declared that "no license to sell liquor, except as herein provided, shall be hereafter granted."

Held, that the legislature had the power to abrogate such licenses; that by the above section they did abrogate them: excepting only licenses of a particular character. The exception is a nullity, there being nothing for it to act upon. But the abrogation remains absolute, as if no exception was ever incorporated with it.

Therefore there is no authority in the trustees of the village of Rome, under their charter, or in the commissioners of excise under the Revised Statutes, (which are substantially alike on this subject,) to grant such licenses in pursuance of their respective provisions, after the 9th of April, 1855.

Consequently, individuals selling liquors without such a license, after that time,

incurred no penalty. (*It will be seen that this decision overrules that of Mr. Justice* Marvin *upon this question, in* The People *agt.* Tiphaine, 13 How. 74.)

*Fifth District, Oneida General Term, May,* 1856.

THIS was an action commenced July 3, 1855, to recover the penalties provided by the charter of the village of Rome (and which are the same as under the Revised Statutes) for the sale of liquor, *between the time the former licenses expired,* (about the 1st May, 1855,) and the time when the "*Maine Law,*" so called, took effect,—(July 4, 1855.)

The defence was, that in all *that* time there was no law in force, under or by which the penalties claimed could be recovered.

The issues were tried at the Oneida circuit, Judge PRATT presiding. The sale of the liquor was proven, and the defendant's counsel moved for a nonsuit, on the ground *that as no license could be obtained,* after the passage of the "Maine Law," *no penalty attached for the sale without license.*

The power to grant license having been taken away by the "Maine Law," *the effect was to restore to every person their common-law right*—i. e., *the sale of liquor was free.*

The court, after argument, nonsuited the plaintiff, and an appeal was taken to the general term of the fifth district.

FROST & SPRIGGS, *for plaintiff.*
JOHNSON & BOARDMAN, *for defendant.*

By the court—W. F. ALLEN, Justice. By the act revising, amending and consolidating the several acts relating to the village of Rome, passed in 1853, authority was conferred upon the trustees of the village to grant licenses to sell distilled and fermented liquors in quantities less than five gallons, but not to be drank on the premises; and also licenses to keep a tavern, grocery, victualling shop, or other place, with the right to sell distilled or fermented liquors, to be drank therein : and it was enacted, that whoever, within the bounds of said village, should sell any distilled or fermented liquors, in any quantity less than

five gallons, without having procured a license therefor, should forfeit the sum of twenty-five dollars, to be sued for and recovered in the name of "The Village of Rome." (*Laws of 1853, p.* 151; *title* 5 *of Amended Charter of Rome.*)

This provision is in harmony with the Revised Statutes, relating to "Excise, and the Regulations of Taverns and Groceries." (1 *R. S.* 677.) The difference between this local law and the general law upon the same subject not being substantial, but relating principally to the persons designated as commissioners of excise, to grant the licenses, and the mode of enforcing the collection of the penalties given.

Together they form parts of one system, having for its object two things—the imposition of a duty upon the retail traffic in intoxicating drinks, and the regulation of that traffic in quantities less than five gallons. This general intent is indicated by the title of the act, of "Excise and the Regulation of Taverns and Groceries," as well as by the general scope and tenor of the laws on the subject.

The first question to be considered is, whether the provisions of the law authorizing the granting of licenses were in force in June, 1855, or whether, by the force and effect of the "Maine Law," so called, the power to grant licenses for the sale of intoxicating drinks, had been absolutely abrogated; and this depends upon the true construction of the 25th section of the act of 1855, (*Sess. Laws, p.* 356,) which is to this effect:

"No license to sell liquor, except as herein provided, shall hereafter be granted."

This section took effect, if at all, on the day of the passage of the act, (April 9, 1855.)

There was no provision for licensing any person to sell liquor contained in the act.

The 2d section, which was to take effect on the 1st of May, authorized any citizen complying with and conforming to the requirement of the act to sell intoxicating liquor for the purposes specified, and the residue of the act was to take effect on the fourth day of July thereafter. Had the act been valid, and effect been given to it according to its plain reading, this would

Village of Rome agt. Knox.

have been the state of things—from the 9th of April to the 1st of May, no licenses could have been granted, and no one could have sold liquor under the provisions of that act, and from about the 1st of May to the 4th of July there would have been no licenses, before then granted, in force, as they expired on the 1st Tuesday of May, and sales could only have been lawfully made under the provision of the 2d section of the act; and yet, unless the penalties given by the Revised Statutes were still in force, there were no penalties for a violation of law.

Whether these penalties were and are really in force, we shall hereafter inquire; but whether they were or not, had the law been adjudged constitutional, no one would have claimed, in the face of the 25th section, that licenses could have been granted merely upon the *guess* that it could not have been the intention of the legislature to suffer unrestricted traffic in ardent spirits during the months of May and June, as would have been the case if no penalty attached to the violation of the law prohibiting such traffic.

If licenses could have been granted at all on the first Tuesday of May, it would have been for one year, (1 *R. S.* 679, § 5,) and thus the taking effect of the " Maine Law " would have been postponed contrary to the express declaration of the legislature for nearly one year. To give this construction and this effect to the act, would be to interpret the act, and judge of the intent of the legislature, from the consequences of their acts rather than the language which they have employed, which is not recognized as one of the canons for the interpretation of laws.

There would probably have been no diversity of opinion as to the intent and effect of the 25th section, but for the fact that the leading provisions of the act prove to be unconstitutional, and therefore invalid; and an interpretation is now sought to be given to it by giving an unusual effect to the exception contained in it, as evidence of the intent of the legislature.

In construing and giving effect to a statute, it is true, that the intent of the framers of the act is to be sought, but it is the intent, as expressed and declared in the law to be construed.

Doubtful words may be explained, but an intent not expressed by the words used, when fairly interpreted and rightly understood, cannot be attributed to the framers of the act, or made effectual by any process of judicial construction. The province of a court is to interpret legislative acts, and not to legislate by giving a construction to statutes different from the thoughts and intent expressed upon their face, to meet circumstances which may have been unforeseen at the time of their enactment, and which, it would be reasonable to suppose, would have been provided for had they been foreseen.

Interpretation is the act of finding out the true sense of any form of words—that is, the sense which their author intended to convey—and of enabling others to derive from them the same idea which the author intended to convey. (*Liebn. Political and Leg. Herm.* 23.)

The rule by which courts should be governed, in the interpretation of a statute, or constitution, or an agreement *inter-partes*, is well expressed by Judge JOHNSON, in *Newell* agt. *The People*, (3 *Seld. R.* 97; *and see, also,* M'*Clusky* agt. *Cromwell*, 1 *Kern.* 593.)

It is well settled that it is not allowable to interpret that which needs no interpretation—that is, when the words of an act are clear and express, and the meaning evident, the words are to be taken in their natural sense, and effect given to them accordingly. (*Smith on Statutes*, 627; *Purdy* agt. *The People*, 4 *Hill*, 384.)

The language of the 25th section of the act prohibiting licenses in the future, is clear and precise, and is absolute in its terms, and the legislature were competent to abrogate the license system without providing a substitute; and had they done so without attempting a substitute, no question of intent would have arisen. But the section is found making a part of a law designed to prohibit all traffic in ardent spirits as a beverage, and contains an exception which is inoperative; and these circumstances are resorted to as evidence that the legislature did not intend what they have said, or that there was an implied condition annexed to the prohibition of licenses. Now, I know

of no principle by which courts can annex a condition to the taking effect of a law of the legislature, which the law-making power has not imposed, when the condition does not relate to the jurisdiction of the legislature to act upon the subject. The legislature has said, as plainly as they could, that the taking effect of the entire act, or any part of it, was not a condition precedent to or concurrent with the taking effect, as law, of the 25th section, for they have declared that it should go into operation before any other part of the act. The repeal of statutes by implication is not favored in law, for the very obvious reason that it is deemed better that the legislature should declare their will in that respect in express terms, and hence when two statutes can stand together, although relating to the same subject, they will be permitted to do so rather than impute an intention to the legislature to repeal the first statute, which they have omitted to do in express terms. The same reason should make courts cautious in deciding that the legislature only designed a statutory provision to take effect upon the happening of a contingency, when no condition is annexed to the statute itself.

The unconstitutionality of one or more of the provisions of the act does not affect the validity of other provisions which are within the pale of the constitution, unless they are connected with the unconstitutional provisions, and are designed to carry them out, and all make a part of an entire act of legislation—of one scheme or system, so that effect could not properly be given to the provisions, which, by themselves or in any other connection, would be constitutional and valid.

It is not claimed that the provision of the 25th section of the act in question is thus circumstanced. The license system could not stand with the "Maine Law;" and had the latter act been valid, the former would have been repealed by implication; but to save all doubt on the subject, the 24th section expressly repealed all acts, &c., inconsistent with it, so that the 25th section was an independent provision, not designed or necessary to inaugurate or execute the new system, or at all connected with it, and can stand although every other part of the act should be declared unconstitutional.

But the intent of the legislature is invoked because it forms one section in the act, and it is claimed that it is plainly to be inferred that the legislature would not have passed the section if they had not supposed they had effectually prohibited the sale of ardent spirits, except as provided for by the act then passed, and therefore a condition must be implied that the section shall not take effect unless all has been done that was supposed or intended. The premises being conceded, I deny the conclusion. The legislature are competent to make their own conditions, and declare the terms upon which statutes shall take effect; and they can now, whenever they desire, re-instate the old excise system,—do so by simply repealing this section of the " Maine Law."

But, if guessing at the intent of the legislature was allowable, I am not clear that we have the necessary data to give a respectable guess at what the legislature would have done, had they foreseen that the law would have been declared unconstitutional. One might conjecture that some would have voted for it, who did vote against, and *vice versa*, and some might be ill-natured enough to conjecture that it would have become a law by a larger vote than it actually received on its passage. And in relation to the particular provision under consideration, we know that different men have viewed the license system differently.

One class of political economists are opposed to the excise system as conflicting with their views, which favor free trade in all branches, and oppose all duties and all restrictions upon the traffic of the citizen, and they would not make the retail trade in intoxicating drinks an exception to these rules. Another class, without any regard to any particular system of political economy, are opposed to any restraint or any tax upon this particular trade.

This class may not be large, and they would favor a repeal of the license laws for reasons peculiar to themselves.

A third class exists who conscientiously look upon the traffic as one of unmitigated evil—as the cause of very much of the pauperism and crime which it was the benevolent design of the

law in question to prevent, and in which no man can, without incurring great guilt, engage; who favor prohibition to the utmost extent allowed by the constitution; and who, if it were possible, would absolutely prohibit all traffic in it, except for the limited purposes specified in the "Maine Law," and yet who are opposed to the system of licensing for the reason that in their view it creates a partnership in sin.

They would say that, by a license, the state expressly sanctions the traffic, and, by undertaking to regulate it, treats it as a lawful and proper business of life; and, by receiving the tax imposed for the permit, receives the reward of iniquity, and becomes partaker with the seller in all his guilt. This class would wash their hands of the trade by abrogating the license laws, although they might not be able to prohibit it.

Still a fourth class, who favor prohibition, yet, wanting that, favor all intermediate and lesser restraints upon the traffic, and they favor the excise laws in the absence of a more stringent provision, as tending to diminish the traffic, and consequently the evils resulting from it.

There is, also, a fifth class, that look upon the excise laws with favor, regardless of every other consideration, save the fact that certain sums of money are received by way of tax for benefit of the public, upon the granting of licenses.

Now, who shall say which of these classes, or what combination of classes was influential in causing the 25th section to be adopted, and incorporated in the "Maine Law," or by what motives the framers of the law were induced to insert it? Can any one say that it was not inserted to secure the votes of some of the three first classes to the bill? The intent of the legislature, when sought to be gathered from circumstances, or from anything other than the language employed, cannot, in the nature of things, be satisfactorily ascertained; and the only safe way is to read the laws they make as they write them.

When a statute professes to repeal absolutely a prior law, and substitutes other provisions on the same subject, which are limited to continue only to a certain time, the prior law does not revive after the repealing statute is spent, unless the inten-

tion of the legislature to that effect be expressed. (*Warner* agt. *Wendle*, 3 *East*, 205.)

The repeal of a repealing statute revives the original act, because it is a very clear expression of the legislative will, that it should be so; but the same reason does not apply where parts of an act, of which the repealing act makes a part, fail for any reason, not affecting the repeal, to become operative, any more than the expiration of the substituted act revived the original act in the case of *Warner* agt. *Wendle*. (*See, also, Morse* agt. *Williams*, 1 *C. & P. 468*; *Wheeler* agt. *Roberts*, 7 *Cow*. 536; *Tuttle* agt. *Greenwood*, 3 *Bing*. 493.)

A constructive revival cannot operate upon any part of an act which has been expressly altered. (*Bacon's Abg. Statute D.*)

The power to grant licenses having been expressly abrogated, and whatever. effect the unconstitutionality of the residue of the act may have upon other laws, before existing, this power cannot be revived by construction. (*See, also, Bishop's case*, 12 *Rept*. 7.)

But the exception contained in the section abrogating licenses is appealed to as evidence that the' legislature only intended that abrogation on condition that the second section of the act took effect as law. In the first' place, the exception has no business in the section, and its being there is simply a blunder. Some incongruities were created by the amendments made during its passage, relating to the time at which the different parts of the act were to take effect.

The exception in the bill, as reported, had a meaning for them : the second section provided for permits, or licenses, to one in each election district, to sell intoxicating liquors for the purposes specified. (*See Doc. of* 1855, No. 13.)

This section was amended in its passage through the two houses, and licenses were not, by the act as amended and finally passed, required or allowed; but the legislature omitted to make the proper amendment to the 25th section, and as that was matter of form, rather than of substance, no evil could in any event result from it. The history of the act shows that no light is

thrown upon the intent of the legislature by the exception, as it stands in the act.

If it proves anything, it is only that the abrogation of licenses was the important office of the section, and the rest of it was not scrutinized by the legislature.

Had the exception been an important part of the provision, care would, perhaps, have been taken to conform it to the act as amended, and the section might have been made to read something as follows :—

" No license to sell liquor shall hereafter be granted; and no person shall, after this act shall take effect as law, sell liquor, except as herein provided."

But no matter how the exception came in the statute in its present form, there was a time (from the 9th of April to the 1st of May) when, in the nature of things, there could have been nothing upon which it could operate, and yet the main clause prohibiting licenses was in force. The ordinary rule is, in deeds, patents and grants, as well as statutes, that when an exception has nothing upon which to operate, or when it becomes impossible, it (*the exception*, and not the principal grant or statute) is void, and this must be so. The thing excepted not being *in esse*, the exception is simply a nullity—the grant remains good. (*Com. Dig. Fait, E.* 7.)

The rule should not be reversed to meet the exigencies of any case, no matter how pressing they may be. The exception was for the benefit of those who should elect to traffic under the provisions of the act. It turns out that these provisions are inoperative, and therefore there is no one to avail himself of the benefit of the exception, and it remains inoperative. This appears to me to be the length and breadth of the effect of this exception, under any construction of its terms.

It follows, then, that the legislature had the power to abrogate licenses; that they did abrogate them—excepting only licenses of a particular character, or what was probably intended by the act, under the name of licenses, and was simply an authority to any citizen to sell, under certain circumstances.

The exception is inoperative, and the abrogation remains absolute, as if no exception was ever incorporated with it.

If I am right in my conclusion, there was no authority in the trustees of the village of Rome to grant licenses after the 9th of April, 1855. There being no authority to license, did the defendant incur a penalty for selling without a license? I may be permitted to assume, since the decision in the court of appeals, (3 *Kern.* 378,) that, by the laws of this state, it was the right of the defendant to traffic in ardent spirits, which he had on hand, subject to such restrictions, by way of *regulation*, as the legislature might impose.

Now, by way of regulating the traffic, and for the purpose of creating a revenue, the legislature provided that no one should sell ardent spirits, in quantities less than five gallons, except upon condition that a license for the purpose was first procured from the proper officers.

The effect of selling without such license, without a compliance with this condition precedent was, that the party offending incurred a penalty, not for doing that which he had a common-law right to do, and which it would seem the legislature could not entirely prohibit, but for not complying with the condition precedent. This is recognized as the offence by the statute imposing the penalty. It is for " selling without having obtained a license therefor."

This must be so if the act is considered, as it really is, one of regulation, and not of prohibition.

The performance of the condition has become impossible by the act of the state, the party imposing the penalty; and the condition necessarily falls, and the penalty no longer attaches to the sale. (*Bacon's Abg. Condition*, 2 *Com. Dig. Condition L.* 12, 13.)

If the power to sell depended upon the license, it would be different. The want of a license is excused by necessity, as when a party was unable to procure it for the reason that the commissioners of excise did not meet. (*Palmer* agt. *Doney*, 2 *J. C.* 346 ; *2d Kent Com.* 596.)

If a temporary necessity will excuse a sale without a license,

*a fortiori,* will an absolute inability to procure a license at any time relieve a party from all penalties imposed for selling without a license?

The only difficulty I have had, in arriving at my conclusion, has arisen from the respect I entertain for the opinion of my brother MARVIN, of the 8th district, who, in the case of *The People* agt. *Tephaine,* (13 *How.* 74,) has come to a different conclusion, and fortified his position by an able argument; and had I been sitting at circuit or special term, I should have gladly deferred to that decision; but after the best examination I have been able to give the questions involved, and which were argued at general term, I am constrained to dissent from the case cited, and declare for the judgment indicated.

The judgment at circuit must be affirmed.

PRATT, BACON and HUBBARD concurred.